## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

DANIELLE RUIZ, JESSICA "CHARM"
KILLINGS, and TIFFANY TOTH GRAY,

          *Plaintiffs*,                   Civil Action No.:

v.

BOSTON LECO CORP. and LOUIS A.
DELPIDIO,

          *Defendant*.

Plaintiffs DANIELLE RUIZ, JESSICA "CHARM" KILLINGS, and TIFFANY TOTH GRAY  (collectively, "Plaintiffs"), by and through their undersigned counsel, as and for their Complaint ("Complaint") against defendant BOSTON LECO CORP. d/b/a CANDIBAR BOSTON (collectively "Defendant") and LOUIS A. DELPIDIO respectfully allege as follows:

## BACKGROUND

1.      This is an action for damages and injunctive relief relating to Defendant's misappropriation, alteration, and unauthorized publication and use in advertising of images of Plaintiffs, each of whom are well-known professional models, to promote their night club, Candibar located in Boston, Massachusetts ("Candibar" or the "Club").

2.      As detailed below, Defendant's misappropriation and unauthorized use of Plaintiffs' images, photos and likenesses (collectively, "Images") constitutes: a) violation of section 43 of the Lanham Act, 28 U.S.C. § 1125(a)(1), which prohibits both false or misleading representations of fact in commercial advertising and the false or misleading use of a person's image for commercial purposes; b) violation of each Plaintiff's common law right of privacy as pertains to Defendant's appropriation of their likeness; c) violation of Massachusetts's Unfair

Trade Practices Act (M.G.L.A. 93A § 11); d) violation of Massachusetts's right of publicity statute (M.G.L.A. 214 § 3A;  e) defamation; and f) various common law torts, including conversion.

3.      In addition to the actual, punitive and exemplary damages set forth below, Plaintiffs likewise seek an Order from this Court permanently enjoining Defendant from using their Images to promote any Club, via any medium.

<u>**JURISDICTION & VENUE**</u>

4.       This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs have stated claims under, *inter alia*, the Lanham Act, 28 U.S.C. § 1125(a)(1), and jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

5.      As set forth immediately below, Plaintiffs are, and at all times relevant to this action have been, professional models who reside throughout the United States.

6.      According to publicly available records, defendant BOSTON LECO CORP. is a corporation formed under the laws of the state of Massachusetts, with its principal place of business located at 279 Tremont Street, Boston, Massachusetts 02116.  BOSTON LECO CORP. operates Candibar, which is located at 279 Tremont Street, Boston, Massachusetts 02116.

7.      Venue is proper in the United States District Court for the District of Massachusetts because Boston, Massachusetts is Defendant's principal place of business.

8.      Primarily and substantially the alleged causes of action arose and accrued in Boston, Massachusetts and the center of gravity for primarily and substantially all relevant events alleged in this complaint is predominately located in Boston, Massachusetts.

<u>**PARTIES**</u>

*Plaintiffs*

9.     Plaintiff Danielle Ruiz ("Ruiz") is a well-known professional model, and a resident of Los Angeles County, California.

10.     Plaintiff Jessica "Charm" Killings ("Killings") is a well-known professional model, and a resident of Los Angeles County, California.

11.     Plaintiff Tiffany Toth Gray ("Toth") is a well-known professional model, and a resident of Orange County, California.

*Defendant*

12.     According to publicly available records, defendant BOSTON LECO CORP. is formed under the laws of the state of Massachusetts.  During times relevant to this action, BOSTON LECO CORP. operated Candibar in Boston, Massachusetts.

13.     According to publicly available records, and upon information and belief, LOUIS A. DELPIDIO, in his capacity as principal, owner and/or CEO of BOSTON LECO CORP. maintained operational control over Candibar, including all advertising relating thereto.

## FACTUAL ALLEGATIONS

14.     As set forth immediately below, each Plaintiff is a well-known professional model who earns her livelihood modeling and licensing her Images to companies, magazines and individuals for the purpose of advertising products and services.

15.     Plaintiffs' careers in the modeling industry place a high degree of value on their good will and reputation, which is critical in order to maximize their earning potential, book modeling contracts, and establish each of their individual brands.  In furtherance of establishing, and maintaining, their brands, Plaintiffs are necessarily selective concerning the companies, and brands, for which they model.

16.     Each of the Plaintiffs' Images was misappropriated, and intentionally altered, by

one or more of the Defendant in order to make it appear that they worked at, endorsed or were otherwise associated or affiliated with Candibar.

17.     In the case of every Plaintiff, such appearance was false.

18.     Moreover, in every case this misappropriation occurred without any Plaintiff's knowledge, consent or authorization, at no point did any Plaintiff ever receive any remuneration for Defendant's improper and illegal use of their Images, and Defendant's improper and illegal use of Plaintiffs' Images have caused each Plaintiff to suffer substantial damages.

19.     Further, in certain cases Defendant misappropriated Plaintiffs' advertising ideas because the Images they misappropriated came from Plaintiffs' own social media pages, which each Plaintiff uses to market herself to potential clients, grow her fan base, and build and maintain her brand.

***Plaintiffs' Backgrounds and Careers***

20.     Danielle Ruiz is a veteran of the entertainment industry and an extremely accomplished, established, and highly sought model, host, and actor. She shot to fame by winning Miss Hawaiian Tropic Brazil and competing worldwide. As a model, she has worked for Foreplay Lingerie, Elegant Moments, Escante Lingerie, Hustler Apparel, Body Zone Apparel, and Ziggy NY Shoes. She was also a contract model for Fredericks of Hollywood and L*Space, also for Rockstar Energy's Miss Motocross and Monster Energy Dime Squad Girl. She has appeared in many magazines and graced the covers of *Maxim* and *Elegant*. Her career on TV is just as impressive with appearances on *The New Girl*, *The Finder, Breaking In*, *Cougar Town, CSI Entourage, The Jonas Brothers, Miami Trauma, Dark Blue, Love Bites, Friends with Benefits, Battle LA, The Ex's* and hosting the series *WPT Royal Flush*. She has over 182 thousand followers on Instagram and over 16 thousand followers on Twitter.

21.     That we know of, Ruiz is depicted in the photo in Exhibit "A" to promote

- 4 -

Candibar on its Facebook page. This Image was intentionally altered to make it appear that Ruiz was either an entertainer working at Candibar, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

22.     Ruiz has never been employed at Candibar, has never been hired to endorse Candibar, has never been otherwise associated or affiliated with Candibar, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

23.     Jessica 'Charm' Killings is a model and music video star.  She has appeared in a number of popular magazines such as *SHOW, Blackmen, Straight Stuntin, Smooth,* and *Mixed*. Killings has also appeared in several music videos as the lead talent including Far East Movement ft. Snoop Dogg's video "OMG," Slim Thug and Baby Bash's video "Swananana," Big Sean and Chris Brown's video "My Last," Bow Wow's video "Pretty Lady," and Jay Sean ft. Nicki Minaj's video "2012."  Killings has 1.9 million Instagram followers and 53.1 thousand Twitter followers. Killings got her start in the industry when a friend introduced her to the editor of Show magazine around 2009.

24.     That we know of, Killings is depicted in the photo in Exhibit "B" to promote Candibar on its Instagram page. This Image was intentionally altered to make it appear that Killings was either an entertainer working at Candibar that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

25.     Killings has never been employed at Candibar, has never been hired to endorse Candibar, has never been otherwise associated or affiliated with Candibar, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

- 5 -

26.     Tiffany Toth Gray is an extremely successful model that takes great pride in holding the prestigious title of a *Playboy* Playmate. Toth was the *Playboy* "Cyber Girl of the Month" for May 2006. She then went on to pose for three pictorials under *Playboy's* Fresh Faces. Moreover, she has not only been featured in such magazines as *Super Street Bike*, *Import Tuner, Sport Truck, Iron Man, Seventeen*, and *Maxim*, but has also posed for various catalogs. Toth currently has over 3.7 million Facebook followers, 1.4 million Instagram followers, and over 305 thousand Twitter followers, and 1.08 thousand YouTube subscribers.

27.     That we know of, Toth is depicted in the photo in Exhibit "C" to promote Candibar on its Instagram and Facebook pages. This Image was intentionally altered to make it appear that Toth was either an entertainer working at Candibar, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

28.     Toth has never been employed at Candibar, has never been hired to endorse Candibar, has never been otherwise associated or affiliated with Candibar, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

***Defendant's Business***

29.     Upon information and belief, Defendant operated, during the relevant time period, Candibar, where they engaged in the business of selling alcohol and food in a sexually-charged atmosphere.

30.     Upon information and belief, and in furtherance of its promotion their promotion of Candibar, Defendant owns, operates and controls Candibar's social media accounts, including its Facebook and Instagram accounts.

31.     Defendant used Candibar's Facebook and Instagram accounts to promote

Candibar, and to attract patrons thereto.

32.     Defendant did this for their own commercial and financial benefit.

33.     Defendant has used, advertised, created, printed and distributed the Images of Plaintiffs, as further described and identified above, in order to create the false impression with potential clientele that each Plaintiff either worked as an entertainer working at Candibar, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

34.     Defendant used Plaintiffs' Images and created the false impression that they worked at or endorsed Candibar to receive certain benefits therefrom, including but not limited to: monetary payments; increased promotional, advertising, marketing, and other public relations benefits; notoriety; publicity; as well as an increase in business revenue, profits, proceeds, and income.

35.     As Defendant was at all times aware, at no point have any of the above-named Plaintiffs ever been affiliated with or employed by Candibar and at no point have any of the Plaintiffs ever endorsed Candibar, or otherwise been affiliated or associated with Candibar.

36.     All of Defendant's activities, including their misappropriation of Plaintiffs' Images, and publication of same, were done without the knowledge or consent of Plaintiffs, and Defendant did not compensate Plaintiffs for their use of their Images.

37.     As such, Plaintiffs have never received any benefit from Defendant's use of their Images.

***Standard Business Practices in the Modeling Industry***

38.     It is common knowledge in the modeling industry that the hiring of a model for a commercial purpose involves a particularized methodology and process.

39.     The fee that a professional model, such as each of the Plaintiffs, will receive is

negotiated by her agency, and involves consideration of, without limitation, at least the following factors: a) the reputation, earning capacity, experience, and demand of that particular model; b) the location where the photo shoot takes place, and the length thereof; c) where and how the images are going to be used by the client (*e.g.*, company website, social media, television commercials, billboards or posters), known as "usage"; and, d) the length of time (known as the "term") the rights to use the photos will be assigned. Most licenses to use a model's image are for 1, 2, or 3 year terms; but almost never is there a "lifetime" term.

***Defendant's Misappropriation of Plaintiffs' Images***

40.     As detailed above, Defendant knowingly, and without the prior consent of any of the Plaintiffs, invaded Plaintiffs' privacy by using Plaintiffs' Images for commercial purposes in order to promote Candibar by and through various marketing and promotional mediums including, without limitation, Candibar's website, Twitter, Facebook, and Instagram.

41.     Defendant showcased Plaintiffs' Images on Candibar's social media pages to create the false impression that Plaintiffs worked at Candibar, endorsed, promoted or sponsored same, or were otherwise associated or affiliated with same.

42.     Defendant did so to attract clientele to Candibar, promote Candibar, and thereby generate revenue for Defendant.

43.     Defendant was aware that, by using Plaintiffs' Images, they were violating Plaintiffs' right to privacy, Plaintiffs' right of publicity, and creating a false impression to potential customers that Plaintiffs worked at and/or endorsed Candibar.

44.     Unauthorized use of Plaintiffs' Images deprives them of income they are owed relating to the commercialization of their Images.

45.     In addition, Plaintiffs allege that any improper or unauthorized use of their Images

substantially injures their careers.

46.     This is especially so insofar as each of Plaintiffs' Images have been associated with a night club, and the implication of Defendant's use of Plaintiffs' Images is that they are entertainers, endorse a night club, or are otherwise associated or affiliated with a night club.

47.     At no point were any of the Plaintiffs ever affiliated with Candibar, or Defendant.

48.     Each of Plaintiffs' Images was used without her consent.

49.     At no point was any Plaintiff ever contacted by any Defendant, or any representative of any of the Defendant, to request the use of any of Plaintiffs' Images.

50.     No Defendant ever obtained, either directly or indirectly, permission to use any of Plaintiffs' Images.

51.     No Defendant ever paid any Plaintiff for its use of her Images on any promotional materials, including Candibar's Facebook or Instagram accounts.

52.     Defendant used Plaintiffs' Images without their consent, and without providing remuneration, in order to permanently deprive each of the Plaintiffs of her right to use her Images.

53.     Upon information and belief, Defendant has taken the foregoing actions with the intent of causing irreparable harm to each of the Plaintiffs.

## **FIRST CAUSE OF ACTION**
### **(Violation of §43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(B): False Advertising)**

50.     Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

51.     The provisions of the Lanham Act, 215 U.S.C. §1125, *et seq*. apply to Defendant, and protect Plaintiffs from the conduct described hereon.

52.     As set forth hereon, each advertisement at issue in this action were false and

misleading because no Plaintiff ever worked at Candibar, or agreed to appear in Candibar's advertisements.

53.     Given the false and misleading nature of the advertisements, they had the capacity to deceive consumers and, upon information and belief, did so deceive consumers.

54.     Upon information and belief, said deceptive advertisements had a material effect on the purchasing decisions of consumers who attended Candibar.

55.     Insofar as Defendant's published these false and misleading advertisements on the internet, they had the capacity to affect interstate commerce, and, upon information and belief, did so affect interstate commerce.

56.     Despite the fact that Defendant was at all times aware that the Plaintiffs neither worked at, nor endorsed the Club, Defendant nevertheless used Plaintiffs Images in order to mislead potential customers as to Plaintiff's employment at and/or affiliation with the Club.

57.     Defendant knew that their use of Plaintiffs' Images would cause consumer confusion as to Plaintiffs' sponsorship and/or employment at the Club.

58.     Upon information and belief, Defendant's use of Plaintiffs' Images did in fact cause consumer confusion as to Plaintiffs employment at and/or endorsement of the Club, and the goods and services provided by the Club.

59.     Due to Defendant's unauthorized use of Plaintiffs' Images in order to create a false advertisement prohibited by section 43 of the Lanham Act, Plaintiffs have been damaged in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

## SECOND CAUSE OF ACTION
### (Violation of §43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A): False Association)

60.     Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

61.     The provisions of the Lanham Act, 215 U.S.C. §1125, *et seq.* apply to Defendant, and protect Plaintiffs from the conduct described hereon.

62.     Defendant used Plaintiffs Images in order, *inter alia*, to create the false impression with the public that Plaintiffs were affiliated, connected, or associated with Candibar, or worked at, sponsored, or approved of Candibar's goods, services or commercial activities.

63.     This was done to promote and attract clientele to Candibar, and thereby generate revenue for the Defendant.

64.     Thus, this was done in furtherance of Defendant's commercial benefit.

65.     Despite the fact that Defendant was  at all times aware that the Plaintiffs were neither affiliated, connected or associated with Candibar, nor worked at, sponsored, or approved of Candibar's goods, services or commercial activities, Defendant nevertheless used Plaintiffs Images in order to mislead potential customers as to Plaintiff's employment at and/or affiliation with Candibar.

66.     Defendant knew that their use of Plaintiffs' Images would cause consumer confusion as to Plaintiffs' sponsorship, affiliation, connection, association and/or employment at the Club.

67.     Upon information and belief, Defendant's use of Plaintiffs' Images did in fact cause consumer confusion as to Plaintiffs employment at and/or endorsement of the Club, and the goods and services provided by the Club.

68.     Due to Defendant's unauthorized use of Plaintiffs' Images in order to create a false endorsement prohibited by section 43 of the Lanham Act, Plaintiffs have been damaged in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

**THIRD CAUSE OF ACTION**
**(Common Law Right of Privacy)**

- 11 -

69.     Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

70.     As set forth hereon, Defendant has violated each Plaintiff's common law right to privacy under Massachusetts law.

71.     Defendant has done so by appropriating each Plaintiff's likeness for commercial purposes without authority or consent.

72.      Defendant invaded and violated Plaintiffs' privacy and misappropriated their likeness by publishing their Images on Candibar's website or related social media accounts as part of Defendant's advertising campaign.

73.     At all relevant times, Candibar's website and social media accounts were used and operated by Defendant for advertising and trade purposes.

74.     Candibar's website and social media accounts were designed to attract business to the Club and generate revenue for Defendant.

75.     Plaintiffs are informed and believe and hereon allege that the manner in which Defendant posted and publicized their image and likeness in a manner that was hidden, inherently undiscoverable, or inherently unknowable, in that Defendant published their image and likeness on social media threads that, over time, are (for example, but not limited to) "pushed" down in time from immediate visibility.

76.     Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendant's republicized Plaintiff's image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

77.     Plaintiffs are informed and believe and hereon allege that Defendant's

republication of Plaintiff's image and likeness was altered so as to reach a new audience and/or promote a different product.

78.     Upon information and belief, Defendant's use of Plaintiffs' Images did in fact attract clientele and generate business for Candibar.

79.     At no point did any Defendant ever receive permission or consent to use any Plaintiff's Image on their website or social media account.

80.     Defendant was at all relevant times aware that they never received any Plaintiffs' permission or consent to use their Images on any website or social media account, or on any other medium, in order to promote the Club.

81.     At no point did Defendant ever compensate Plaintiffs for its use of their Images.

82.     Defendant's actions are an unreasonable and/or serious interference with each Plaintiff's right of privacy.

83.     No applicable privilege or authorization exists for Defendant's use of Plaintiffs' Images.

## FOURTH CAUSE OF ACTION
### (Violation of *M.G.L. c. 214 § 1B*:  Right of Privacy)

84.     Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

85.     Defendant has violated each Plaintiff's statutory right to privacy under *M.G.L. c. 214, § 1B*.

86.     Defendant has done so by appropriating each Plaintiff's likeness for commercial purposes without authority or consent.

87.      Defendant invaded and violated Plaintiffs' privacy and misappropriated their likeness by publishing their Images on Candibar's website or related social media accounts as

part of Defendant's advertising campaign.

88.    At all relevant times, Candibar's website and social media accounts were used and operated by Defendant for advertising and trade purposes.

89.    Candibar's website and social media accounts were designed to attract business to the Club and generate revenue for Defendant.

90.    Plaintiffs are informed and believe and hereon allege that the manner in which Defendant posted and publicized their image and likeness in a manner that was hidden, inherently undiscoverable, or inherently unknowable, in that Defendant published their image and likeness on social media threads that, over time, are (for example, but not limited to) "pushed" down in time from immediate visibility.

91.    Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendant's republicized Plaintiff's image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

92.    Plaintiffs are informed and believe and hereon allege that Defendant's republication of Plaintiff's image and likeness was altered so as to reach a new audience and/or promote a different product.

93.    Upon information and belief, Defendant's use of Plaintiffs' Images did in fact attract clientele and generate business for Candibar.

94.    At no point did any Defendant ever receive permission or consent to use any Plaintiff's Image on their website or social media account.

95.    Defendant was at all relevant times aware that they never received any Plaintiffs' permission or consent to use their Images on any website or social media account, or on any

other medium, in order to promote the Club.

96.     At no point did Defendant ever compensate Plaintiffs for its use of their Images.

97.     Defendant's actions are an unreasonable, substantial and/or serious interference with each Plaintiff's right of privacy.

98.     No applicable privilege or authorization exists for Defendant's use of Plaintiffs' Images.

**FIFTH CAUSE OF ACTION**
**(Violation of *M.G.L. c. 214 § 3A*:  Unauthorized Use of**
**Individual's Name, Portrait, or Picture)**

99.     Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

100.    As set forth hereon, each Plaintiff has and had at the time of Defendant's misappropriation a commercial interest in her image, photo, persona and likeness.

101.    Within Massachusetts, Defendant's used each Plaintiff's image, photo, persona and likeness for advertising, trade, and/or commercial purposes in promotion of their night club.

102.    No Plaintiff ever gave Defendant's written consent, authorization, or otherwise granted permission to Defendant's to use her image for any advertising purposes, trade purposes, or any commercial purposes, or any other purpose whatsoever.

103.    Defendant was at all times aware that no Plaintiff ever authorized Defendant to use her image in advertising.

104.    As such, Defendant's misappropriation and publication of each Plaintiff's image in advertising was knowing and willful.

105.    Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendant's republicized Plaintiff's image and likeness on various occasions, via

different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

106.    Plaintiffs are informed and believe and hereon allege that Defendant's republication of Plaintiff's image and likeness was altered so as to reach a new audience and/or promote a different product.

107.    Defendant was at all relevant times aware that they never received any Plaintiffs' permission or consent to use their Images on any website or social media account, or on any other medium, in order to promote the Club.

108.    At no point did Defendant ever compensate Plaintiffs for its use of their Images.

109.    No applicable privilege or authorization exists for Defendant's use of Plaintiffs' Images.

110.    In addition to the actual damages suffered by Plaintiffs based on Defendant's violation of this statute and given Defendant's willful and knowing misappropriation and publication of each Plaintiff's image, Plaintiffs are entitled to treble damages.

## SIXTH CAUSE OF ACTION
### (Common Law Right of Publicity)

111.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

112.    As set forth hereon, each Plaintiff has and had at the time of Defendant's misappropriation a commercial interest in her image, photo, persona and likeness.

113.    Said commercial interest was developed by each Plaintiff through her investment of time, effort and money in her career, image, persona and likeness.

114.    As set forth herein, Defendant used each Plaintiff's image and likeness for commercial purposes by using same in Blush advertising.

115.   Defendant did so without any Plaintiff's consent, written or otherwise.

116.   Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendant's republicized Plaintiff's image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

117.   Plaintiffs are informed and believe and hereon allege that Defendant's republication of Plaintiff's image and likeness was altered so as to reach a new audience and/or promote a different product.

118.   Defendant was at all relevant times aware that they never received any Plaintiffs' permission or consent to use their Images on any website or social media account, or on any other medium, in order to promote the Club.

119.   At no point did Defendant ever compensate Plaintiffs for its use of their Images.

120.   No applicable privilege or authorization exists for Defendant's use of Plaintiffs' Images.

121.   In addition, because Defendant's actions in misappropriating Plaintiffs' images and violating their common law right of publicity was willful and outrageous, Plaintiffs are entitled to punitive damages in an amount to be determined at trial.

## SEVENTH CAUSE OF ACTION
### (Violation of *M.G.L. c. 93A § 11*: Unfair Trade Practices)

122.   Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

123.   Each Plaintiff, at all relevant times, was engaged in the conduct of a trade or commerce, such that they are considered a "business" under *M.G.L. c. 93A*.

124.   As set forth herein, Defendant embarked on a campaign of false and misleading

advertising in order to convince potential consumers, including those located in Massachusetts, that Plaintiffs were either entertainers at the Club, endorsed the Club, or were otherwise associated or affiliated with the Club.

125.    Such methods of advertising were unfair and deceptive, and constituted deceptive and unfair trade practices under Massachusetts law.

126.    Defendant's actions occurred primarily and substantially within Massachusetts.

127.    Defendant was at all times aware that no Plaintiff was an entertainer at, had contracted to endorse or promote, or was otherwise associated or affiliated with the Club, but nevertheless published each Plaintiff's image.

128.    This was done for Defendant's commercial benefit, and to the detriment of Plaintiffs.

129.    Plaintiffs suffered actual money damages by reason of Defendant's unfair and deceptive advertisements by, *inter alia*, being deprived those monies Defendant should have paid them for their appearance in Defendant's advertisements.

130.    In addition to actual damages, and in light of Defendant's knowing, willful and repeated attempts to deceive consumers, Plaintiffs are entitled to treble damages, and attorneys' fees and costs, , as provided for under this statute.

131.     In addition to actual damages, to Defendant's unfair and deceptive acts may have the effect of causing such loss to each Plaintiff's business that Plaintiffs are entitled to injunctive relief.

## EIGHTH CAUSE OF ACTION
### (Defamation)

132.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

133.    As detailed throughout this Complaint, Defendant has published altered Images of Plaintiffs in order to promote their Club to the general public and potential clientele.

134.    Defendant's publication of said Images constitutes a representation that Plaintiffs was either employed by the Club, that they endorsed the Club, or that they had some affiliation with the Club.

135.    None of these representations were true.

136.    In publishing Plaintiffs' altered Images, it was Defendant's intention to create a false impression to the general public that Plaintiffs were entertainers working at the Club or endorsed the Club.

137.    Defendant was at least negligent in publishing Plaintiffs' Images because they knew, or should have known, that Plaintiffs were not employed by the Club, had no affiliation with the Club, had not consented to the use of their Images, and had not been compensated for the use of their Images.

138.    In the alternative, Defendant published the Images of Plaintiffs with actual malice because they knew that Plaintiffs were not employed by the Club, had no affiliation with the Club, had not consented to the use of their Images, and had not been compensated for the use of their Images.

139.    Despite Defendant's knowledge and awareness of these facts, they nevertheless made the decision to publish Plaintiffs' Images to attract clientele and generate revenue for themselves.

140.    Defendant's publication of Plaintiffs' Images constitutes defamation under Massachusetts law because said publication falsely accuses Plaintiff of having acted in a manner – *i.e.*, working as an entertainer and/or endorsing a night club - which would subject each

Plaintiff to hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, and/or could induce an evil opinion of Plaintiffs in the minds of right-thinking persons, and/or could deprive each Plaintiff of confidence and friendly intercourse in society.

141.    Defendant's publication of Plaintiffs' Images likewise constitutes defamation *per se* under Massachusetts law because said publication would tend to injure each Plaintiff in her trade, business, and profession as a professional model.

142.    This is because any company or brand that sought to hire any of the Plaintiffs as a company or brand representative would be less likely to do so upon learning that she was a professional entertainer and/or promoting a night club, an inference which Defendant's publication of the Images support.

143.    Defendant's publication of Plaintiffs' Images likewise constitutes defamation *per se* under Massachusetts law because, insofar as said publication falsely portrays each of the Plaintiffs as an entertainer, it imputes unchastity to her.

144.    Defendant's publication of Plaintiffs' Image' caused Plaintiffs to suffer damages in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

## NINTH CAUSE OF ACTION
### (Negligence and *Respondeat Superior*)

145.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

146.    Plaintiffs are further informed and believe and hereon allege that Defendant maintain or should have maintained employee policies and procedures which govern the use of intellectual property, publicity rights, and/or the image and likeness of individuals for

promotional and advertising purposes which specifically prevent the *unauthorized and non-consensual* use of intellectual property, publicity rights and/or the image and likeness of individuals for promotional and advertising purposes.

147.   Further, Defendant should have maintained, or failed to maintain, policies and procedures to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

148.   Defendant owed a duty of care to Plaintiffs to ensure that their advertising and promotional materials and practices did not infringe on their property and publicity rights.

149.   Defendant further owed a duty of care to consumers at large to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

150.   Defendant breached their duty of care to both Plaintiffs and consumers by failing to either adhere to or implement policies and procedures to ensure that the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes were not unauthorized, non-consensual, or false and deceptive.

151.   Defendant further failed to enforce or implement the above-stated policies and/or to communicate them to employees, and/or supervise its employees in order to ensure that these policies, along with Federal and Illinois law, were not violated.  Defendant breached their duty of care to Plaintiffs and consumers by its negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

152.   Defendant's breach was the proximate cause of the harm Plaintiffs suffered when their Images were published without their consent, authorization, and done so in a false, misleading and/or deceptive manner.

153.     As a result of Defendant's negligence, Plaintiffs have suffered damages in an amount to be determined at trial.

## TENTH CAUSE OF ACTION
### (Conversion)

154.     Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

155.     Each Plaintiff is, and at all relevant times were, the exclusive owners of all right, title and interest in their Images, and have property interests thereon.

156.     By the conduct detailed above, Defendant converted Plaintiffs' property rights in their Images for their own use and financial gain Images for its own use and financial gain.

157.     As a result of Defendant's unlawful conversion of Plaintiffs' Images, and publication of same, Plaintiffs have suffered damages in an amount to be determined at trial.

## ELEVENTH CAUSE OF ACTION
### (Unjust Enrichment)

158.     Plaintiffs hereby repeat and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

159.     As set forth in detail above, Defendant published Plaintiffs' Images in order to promote the Clubs to the general public and potential clientele.

160.     Defendant's publication was for the purpose of creating a false impression to the general public that Plaintiffs were either entertainers working at the Clubs, or endorsed the Clubs.

161.     Defendant's purpose in publishing Plaintiffs' Images was to benefit commercially due to their purported association with, employment of, and/or endorsement by Plaintiffs.

162.     Upon information and belief, Defendant did in fact benefit commercially due to

their unauthorized use of Plaintiffs' Images.

163.    Defendant has been enriched by their unauthorized control over, and publication of, Plaintiffs' Image because said publication has assisted Defendant in attracting clientele to their Clubs.

164.    Plaintiffs have not been compensated for Defendant's commercial exploitation of their Images, and thus any financial benefit which Defendant received due to said exploitation is unjust.

165.    As such, Plaintiffs have been damaged in an amount to be determined at trial.

## TWELFTH CAUSE OF ACTION
### (Quantum Meruit)

166.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

167.    Plaintiffs are each internationally known models who earn their livings appearing in, *inter alia*, commercials, advertisements, and publications on behalf of companies and brands.

168.    Companies and brands that choose to hire Plaintiffs compensate them for their appearances.

169.    Although Defendant has availed themselves of the benefit of being associated with Plaintiffs, and making it appear to potential customers that Plaintiffs either work at their Club, endorse their Club, or are otherwise affiliated with their Club, Defendant has not compensated Plaintiffs.

170.    Plaintiff is therefore entitled to reasonable compensation for the Clubs' unauthorized use of their Images.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request Judgment in their favor and against Defendant as follows:

(a) For actual damages, in an amount to be determined at trial, relating to Plaintiffs' first through eleventh causes of action;

(b) For an order permanently enjoining Defendant from using Plaintiffs' Images to promote the Club;

(c) For punitive and/or treble damages, in an amount to be determined at trial, based on Defendant's knowing and willful misappropriation of Plaintiffs' publicity and property rights and deceptive trade practices;

(d) For all costs and attorneys' fees incurred by Plaintiffs in the prosecution of this Action pursuant to the Lanham Act, 15 U.S.C.§ 1117 and Massachusetts law, including but not limited to the statutory right to privacy; statutory unauthorized use of name, portrait or picture; and the *M.G.L. c. 93 A* unfair and deceptive trade practices act; and,

(e) For such other and further relief as the Court may deem just and proper.

## (f)  DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury.

Dated: June 3, 2021

PLAINTIFFS,
By their Attorneys,
/s/Paul V. Sullivan
Paul V. Sullivan, BBO# 634466
Sullivan Law Offices, PC
33 Broad Street, Suite 302
Providence, RI  02903
Tel: (401) 861-9900
Fax: (401) 861-9977
psullivan@psullivanlaw.com

and

- 24 -

John V. Golaszewski
The Casas Law Firm, PC
1740 Broadway, 15th Floor
New York, New York
Tel:  (646) 872-3178
Fax:: (855).220.9626
john@casaslawfirm.com
*Pro Hac Vice Application Forthcoming*